UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOHN A. HAWKINS-EL,

Plaintiff,

v.                                          CAUSE NO. 3:23-CV-695-JD-AZ

NATHAN ANGLE, et al.,

Defendants.

<u>OPINION AND ORDER</u>

John A. Hawkins-El, a prisoner without a lawyer, filed several motions to amend
his amended complaint. ECFs 17, 18, 19. Because an amended complaint will supersede
all earlier pleadings and control the case from that point forward, the earlier motions
will be denied as moot, and only the final motion and its attached proposed amended
complaint will be considered. *French v. Wachovia Bank*, 574 F.3d 830, 835 (7th Cir. 2009);
*see also Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) ("For pleading purposes, once an
amended complaint is filed, the original complaint drops out of the picture.").
Hawkins-El states he would like to re-amend his complaint to update the capacity
certain defendants are being sued under, add others, and revise his request for relief.
He has submitted a proposed second amended complaint along with his motion. ECF
19-1.

"Leave to amend is to be 'freely given when justice so requires.'" *Liu v. T&H
Machine*, 191 F.3d 790, 794 (7th Cir. 1999) (quoting *Payne v. Churchich*, 161 F.3d 1030,
1036 (7th Cir. 1998) and Fed. P. Civ. P. 15(a)). Here, after considering Hawkins-El's

motion and proposed amendments—in the interests of justice—the court will grant the motion to amend.

Under 28 U.S.C. § 1915A, the court must screen the amended complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must give a pro se complaint liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That said, a plaintiff can plead himself out of court if he pleads facts that preclude relief. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

Hawkins-El alleges he was denied due process in connection with disciplinary hearings during which he was sanctioned with restitution.[1] Specifically, Hawkins-El claims Disciplinary Hearing Officer (DHO) B. Myers[2] "didn't provide any medical

---

[1] The complaint merges two separate disciplinary actions together—one for battering Sergeant Donny Betzner and one for battering Correctional Officer Tonya Conley. In this section of the order, Hawkins-El's allegations will be set forth as he recites them. However, the court will supplement and/or correct the record in the subsequent sections to provide clarity with regard to the two distinct proceedings.

[2] Hawkins-El refers to her as a disciplinary hearing officer throughout his complaint, but a recent Seventh Circuit opinion related to one of his habeas petitions (which will be addressed below) states that she is a "lay advocate." *Hawkins v. Vanihel*, No. 23-3352, 2024 WL 3251289, at *1 (7th Cir. July 1, 2024),

document[s]" related to the officers' alleged injuries "before or at the hearing." ECF 19-1 at 3. On June 1, 2022, Hawkins-El was found guilty of the infractions and sanctioned with a $50,000 and a $1,000 charge for restitution related to medical expenses, respectively. DHO B. Myers filled out requests for remittance slips based on those restitution sanctions on behalf of Hawkins-El. He claims a different B. Myers, whom he refers to as Unit Team Manager (UTM) B. Myers, signed off on those remittance slips without his approval. The restitution sanctions were officially placed on his trust fund account on July 21, 2022, at 8:31 A.M. However, prior to that time, on June 22, 2022, the Warden had granted Hawkins-El re-hearings on the charges. The restitution sanctions were not removed from his account in the interim however, so Hawkins-El filed grievances.

On August 9, 2022, and August 16, 2022, DHO N. Angle conducted a re-hearing of the original disciplinary charges. Hawkins-El claims his due process rights were "already violated" because DHO Angle "had to be aware that the restitution existed in my sanction and thus knew he was going to find Hawkins-El guilty, without no medical documentation, etc." ECF 19-1 at 4. Based on these allegations as well as additional information that will be discussed below, Hawkins-El was found guilty of the infractions and re-sanctioned with the same restitution amounts. Hawkins-El claims he has asked officials for copies of the medical bills since then, but he hasn't received anything in response.

---

reh'g denied, No. 23-3352, 2024 WL 3554890 (7th Cir. July 26, 2024). For purposes of this order only, she will be referred to as DHO B. Myers.

Hawkins-El states the injuries the officers suffered as a result of the incident were "de minimis" and/or fabricated. *Id*. He states they "didn't need no outside treatment." *Id*. He cites to a criminal charge that "stems from the same incident/disciplinary infraction, cause # 52D01-2209-F5-000252" and claims it was "amended" to a Level 6 felony and "the bodily injury were removed, because there wasn't any serious bodily injury, which Hawkins-El proved it was de minimis and the injuries were very minor and didn't need vast medical treatment." *Id*. Hawkins-El believes if there were any bills, the officials should have been able to produce them "by now." *Id*. Hawkins-El has sued DHO N. Angle, DHO B. Myers, UTM B. Myers, Warden William Hyatte, and Trust Fund Business Officer K. Smith for both monetary damages and injunctive relief in the form of removing the restitution sanction from his trust fund account.

The Fourteenth Amendment provides state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." U.S. Const. amend. XIV, § 1. Inmates have a property interest in the funds located in their prison accounts and, arguably, in the use of that account. *Campbell v. Miller*, 787 F.2d 217, 222–23 (7th Cir. 1986); *see also Hull v. Cooke*, No. 22-2848, 2024 WL 81104, at *2 (7th Cir. Jan. 8, 2024), *reh'g denied*, No. 22-2848, 2024 WL 644676 (7th Cir. Feb. 15, 2024) ("Indiana prisoners have a property interest in the funds in their trust accounts."). While prison officials cannot deprive inmates of those funds without any due process, the Seventh Circuit has determined "[i]t is truly too much to require correctional officials to seek a criminal restitution order or a civil tort judgment before they may restrict an inmate' use of his commissary account until he makes good the damage he has caused . . .." *Campbell*, 787

F.2d at 224. That is because "[s]uch a requirement would delay implementation of, and hence, impair the efficacy of prison disciplinary measures. It would significantly increase the cost of prison administration and unduly burden courts with litigation which is essentially administrative in nature." *Id*. Instead, inmate accounts can be debited or frozen pursuant to restitution orders issued by prison disciplinary boards as long as the "procedural safeguards" at the disciplinary hearing are constitutionally adequate per *Wolff v. McDonnell*, 418 U.S. 539 (1974). *Id*. at 225. Those procedural safeguards require: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense, when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-73. To satisfy due process, before an inmate is deprived of a protected interest, there must be "some evidence" in the record to support the deprivation. *Superintendent, Mass Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985); *see also Campbell*, 787 F.2d at 222; *Hull*, No. 22-2848, 2024 WL 81104, at *2 ("Due process requires, among other things, some evidence supporting the imposition of discipline. This standard is satisfied if there is any evidence in the record that could support the conclusion reached.") (internal quotation marks and citations omitted). Thus, when it has been determined an inmate challenging a restitution sanction "was afforded procedural due process consonant with the circumstances of his incarceration" pursuant to a disciplinary hearing related to that charge, he has not stated a valid Fourteenth Amendment claim. *Campbell*, 787 F.2d at

225; *but cf. Tonn v. Dittmann*, 607 Fed. Appx. 589 (7th Cir. 2015) (dismissal of inmate's due process claim was vacated because he "adequately alleged that the restitution order was not supported by *any* evidence") (emphasis added).

The allegations in Hawkins-El's amended complaint are confusing and do little to shed light on the proceedings that allegedly deprived him of his due process rights. Before continuing, the court will attempt to fill in some of the gaps using publicly available court records.[3] To begin, as noted above, Hawkins-El seemingly lumps his claims together as if they were part of the same underlying disciplinary proceeding, but there were actually two distinct disciplinary charges brought against him resulting in two separate sets of sanctions—one involving the battery of Sergeant Betzner and one involving the battery of Correctional Officer Conley. Hawkins-El acknowledges this in his initial complaint by citing to two habeas petitions filed in the Southern District of Indiana (2:22-CV-550-JRS-MKK & 1:22-CV-2331-SEB-MG) and two disciplinary infraction numbers (MCF-22-04-0286, the battery on Sergeant Betzner, and MCF 22-04-0322, the battery on Correctional Officer Conley), but he doesn't acknowledge the distinction in his amended complaint. *See* ECF 1 at 2–3 & *see generally* ECF 19-1.

The two petitions for writs of habeas corpus filed in the Southern District of Indiana are relevant to the claims Hawkins-El brings here. *See Hawkins-El v. Vanihel*,

---

[3] The court is permitted to take judicial notice of public documents in screening the complaint. *See* FED. R. EVID. 201; *Tobey v. Chibucos*, 890 F.3d 634, 647–48 (7th Cir. 2018); *Daniel v. Cook Cty.*, 833 F.3d 728, 742 (7th Cir. 2016) ("Courts routinely take judicial notice of the actions of other courts or the contents of filings in other courts."); *Mosley v. Ind. Dep't of Corr.*, No. 22-2722, 2024 WL 1651902, at *2 (7th Cir. Apr. 17, 2024) ("Proceedings in state court are proper subjects of judicial notice.").

cause no. 2:22-CV-550-JRS-MKK (S.D. Ind. Nov. 30, 2022) ("Hawkins-El Habeas #1")

and *Hawkins-El v. Vanihel*, cause no. 1:22-CV-2331-SEB-CSW (S.D. Ind. Dec. 2, 2022)

("Hawkins-El Habeas #2"). Both petitions stem from prison disciplinary convictions of

A-117 battery against staff that occurred on the morning of April 22, 2022—one for

battering Sergeant Donny Betzner and one for battering Correctional Officer Tonya

Conley. Relevant portions of the conduct reports forming the basis of the disciplinary

convictions include the following:

> On 4/22/2022 at approximately 8:50AM, I Sgt. D. Betzner was performing curtain detail in JHU. After removing the curtain that was hanging in JHU 103-104 an offender later identified as Hawkins, John 986724 began to walk towards myself and Officer T. Conley asking why we took his curtain. . . .
>
> He continued to make his plea about his curtain then suddenly struck me in the left side of my face hitting me in the eye causing blood to obscure vision in that eye at that point I attempted to perform blocking techniques to prevent further injury but was still struck at least two more times in the head and got shoved back into a wall injuring my left shoulder.
>
> As suddenly as the assault began the incarcerated individual ceased his assault on me and struck Officer T. Conley and threw her onto the bed where it appeared he was attempting to hold her down. Due to my injuries I pulled my can of OC and began to spray the Incarcerated individual in hopes it would temporarily incapacitate him and cause him to release Officer Conley.
>
> Once I was able to get on target area he did get off of her and turned back towards me to which I applied a second burst of OC which did find the target area. He then began to move towards me so I took my uninjured hand that was holding the can of OC and performed a hammer fist that due to my vision being double I was unable to see where connected, but felt it connect.
>
> It was successful in deterring the incarcerated individual from further assault and he then ran to the mop closet by the slider and attempted to

decontaminate himself from the OC spray. At that time Case worker Croft
entered the range and asked for my restraints.

As my can of OC was empty and Officer Conley was shaken from her
ordeal I asked for hers and provided cover while he was being restrained.
Due to the severity of the injury I was sent to outside treatment.
Requesting restitution for medical expenses.

See Hawkins-El Habeas #1, ECF 20 at p. 3 (quoting the conduct report in MCF 22-04-0286

at ECF 20-1). Several days after the incident, an investigator wrote a separate conduct

report focusing on Officer Conley:

I reviewed the Digital Video Recorder in the 1-2 side day room of J-
Housing Unit for the date of 4-22-2022 from 8:49:28 am to 8:54:05 am. At
8:51:07 Hawkins is seen approaching Conley while she is standing in front
of cell 109–110. Hawkins appears to be communicating to Conley and his
body language appears to be hostile as he is waiving his arms around and
pointing in different directions.

At 8:51:59 Betzner and Conley begin to walk in front of cell 113– 114.
Hawkins strikes Betzner directly in Betzner's face with his right fist.
Betzner falls back in a corner and Hawkins continues to go after him.
Conley responds to the assault and all three individuals go off camera
view.

Hawkins right leg comes back into view of the camera and appears to be
pushing into cell 111-112. Betzner's left leg appears in the view of the
camera and enters the same cell. At 8:52:17 Betzner is seen backing out of
the cell and Hawkins is walking toward him. Betzner is holding up his
right hand appearing to be utilizing his chemical agent.

Hawkins continues to walk toward Betzner as he is holding his face
appearing to be contaminated by the chemical agent. At 8:52:27 Conley is
seen coming out of the cell continuing to bend over at the waist appearing
like she cannot breathe. Hawkins was restrained at 8:53:09 and escorted
off the range.

See Hawkins-El Habeas #2, ECF 14 at pp. 2–3 (quoting the conduct report in MCF 22-04-

0322 at ECF 14-1). The conduct report also indicates "both Betzner and Conley were

sent to Dukes memorial Hospital due to the seriousness of their injuries they received from the assault." *Id.*

On August 9, 2022, a disciplinary re-hearing was conducted by DHO N. Angle for MCF 22-04-0286, and, after considering staff reports and evidence from the witnesses, Hawkins-El was found guilty of battering Sgt. Betzner. *See Hawkins-El Habeas #1*, ECF 20 at pp. 5–6 (citing the report of disciplinary hearing in MCF 22-04-0286 at ECF 20-7). Among other sanctions, he was sanctioned with "up to $50,000 in restitution for medical expenses" and a 6,838-day loss of good-time credit. *Id.* at p. 6 (citing *id.*). It was specifically noted that the "sanction reasoning [was] based on SBI causing extreme pain." *Id.* His appeals were denied. *Id.* (citing ECF 20-9 & ECF 20-10). Ultimately, after Hawkins-El was appointed counsel and the matter was fully briefed, the habeas petition was denied too. *Id.* at ECF 56.

As for MCF 22-04-0322, a re-hearing was conducted by DHO N. Angle, on August 16, 2022, and, after considering the staff report, witness statements, and the lay advocate, Hawkins-El was found guilty of battering Officer Conley. *See Hawkins-El Habeas #2*, ECF 14 at p. 5 (citing the report of disciplinary hearing in MCF 22-04-0322 at ECF 14-5). Among other sanctions, he was sanctioned with "up to 1,000 [for] medical expenses" and a 365-day loss of good-time credit. *Id.* On administrative appeal, the loss of good time credit was modified to 180 days, but the restitution sanction remained the same, and his appeal to the final reviewing authority was denied. *Id.* at pp. 5–6 (citing ECF 14-7 & ECF 14-8). Finding that Hawkins-El had not demonstrated any violation of due process, the court denied the habeas petition. *Id.* at ECF 25.

Hawkins-El appealed the dismissal of both habeas petitions. On July 1, 2024, the order of the district court in Hawkins-El Habeas #2 was affirmed. *See Hawkins v. Vanihel*, cause no. 23-3352, 2024 WL 3251289 (7th Cir. July 1, 2024). The appeal of Hawkins-El Habeas #1 remains pending. *See generally Hawkins v. Vanihel*, cause. no. 24-1894 (7th Cir. 2024).

In addition to the two separate disciplinary actions, Hawkins-El's second amended complaint refers to the criminal case in which he was later charged with two counts of battery against a public safety official, a Level 5 felony, in *State v. Hawkins*, cause no. 52D01-2209-F5-000252, Miami Sup. Ct. 1 (filed Sept. 9, 2022). *See* https://public.courts.in.gov/mycase (last visited Sept. 3, 2024). Count 1 charged Hawkins-El with "knowingly or intentionally touch[ing] DONNY BETZNER, a public safety official, in a rude, insolent, or angry manner by striking him and/or struggling with him while said officer was engaged in the execution of his official duties, resulting in bodily injury, an eye socket fracture and/or a split eye lid." *See id.*; *see also* Ex. 1 - Information.[4] Count 2 charged Hawkins-El with "knowingly or intentionally touch[ing] TONYA CONLEY, a public safety official, in a rude, insolent, or angry manner by striking her and/or struggling with her while said officer was engaged in the execution of her official duties, resulting in bodily injury, a facial contusion and/or scalp

---

[4] Because the relevant documents are available online to Indiana attorneys but not readily available online to the public—in the spirit of N.D. Ind. L.R. 7-1(f)—the clerk will be directed to attach the relevant filings to this order.

contusion." *Id*. The probable cause affidavit is consistent with the facts set forth in the disciplinary reports quoted above, and it also indicates the following:

> Betzner and Conley were both sent to the hospital where they received treatment for their injuries. It was determined that Betzner's eye lid was split in 3 places requiring 8 stitches to repair as well as a CT scan determined that the Orbital socket had been fractured. Due to the nature of the fracture, Betzner was transported from Dukes Memorial Hospital to Lutheran Hospital where another CT scan of the injury and consultation with Doctor Austin Gerber determined that the eye socket fractured would require surgery to repair to alleviate the double vision. Conley received facial and scalp contusions.

*Id*.; *see also* Ex. 2 – Probable Cause Aff.[5] Hawkins-El pled guilty to Count 1 and Count 2, both of which were amended from Level 5 to Level 6 felonies, and, on November 16, 2023, he was sentenced to two years on each count to run consecutively with each other and consecutive to his underlying criminal convictions. *Id*.; *see also* Ex. 3 – Plea Agreement & Ex. 4 – Sentencing. Hawkins-El appealed that case, but his attorney filed a motion to voluntarily dismiss it noting that, "Hawkins has been fully advised of his rights and the pros and cons of pursuing this appeal. Hawkins has informed counsel that he wishes to withdraw this appeal with prejudice." *Hawkins v. State*, cause no. 23A-CR-03010 (Ind. App. Dec. 11, 2023). *See* https://public.courts.in.gov/mycase (last visited Sept. 3, 2024). The Court of Appeals of Indiana dismissed his case with prejudice on February 5, 2024. *See id*.

---

[5] Hawkins-El filed a motion in his underlying habeas case arguing that these injuries were "de minimis." *See Hawkins-El Habeas #1*, ECF 33 at p. 1. He attached some of Sgt. Betzner's medical records he apparently received during the criminal proceedings, which indicate Sgt. Betzner received a CT scan at Dukes Memorial Hospital on April 22, 2022, showing he suffered a "left orbital blowout fracture." *Id*., ECF 33-1 at p. 2. In a separate motion objecting to the request to seal those documents, Hawkins-El himself claims the medical records "attest to the 'veracity of truth.'" *Id*., ECF 36 at p. 2.

In this current civil rights lawsuit, Hawkins-El has sued DHO B. Myers for alleged irregularities related to the first set of hearings—namely, that she didn't provide him "proof of medical documents" of the officers' injuries during the disciplinary hearings. However, he admits the original convictions and sanctions were vacated, he received new hearings, and he was ultimately re-sanctioned. Thus, even if DHO B. Myers committed due process violations during those original hearings—a finding the court does not make—they were mooted by the second set of hearings. *See e.g., Brown v. Wyoming Dept. of Corr. State Penitentiary Warden*, 234 Fed. Appx. 874, 878 (10th Cir. 2007) ("We note that alleged violations of due process in the first disciplinary hearing were mooted by Brown's success in having his initial charges vacated.").

Hawkins-El also claims DHO B. Myers and UTM B. Myers committed "fraud and embezzlement" (ECF 19-1 at 3) when they signed the remittance slips related to the restitution sanctions without his approval. However, the remittance slips attached to the amended complaint do not purport to contain forged signatures because B. Myers specifically wrote "Unable to sign RHU" in the offender signature box below a printed version of Hawkins-El's name. *See* ECF 19-2 at 1–2. Based on these documents, his vague claims of fraud and embezzlement are not plausible and will be dismissed.

Hawkins-El also takes issue with the fact that the restitution sanction amount was improperly placed on his trust account on July 21, 2022, approximately one month after the original charges/sanctions were vacated. It's not clear who applied the amount to his account, nor does his complaint provide any facts to suggest it was done purposefully rather than mistakenly. Even if it was done intentionally, he hasn't stated

a viable constitutional claim related to it. His alleged due process concerns were triggered during the hearing by the imposition of the sanction, not by the managerial accounting steps taken afterwards. *See e.g., White v. Indiana Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001) (noting that the requirements for procedural due process outlined in *Wolff* are exhaustive); *see also Hull*, No. 22-2848, 2024 WL 81104, at *3 (finding that even if the defendants overcharged or miscalculated the plaintiff's restitution charges after the hearing, his claim failed because "[a] state actor's violations of the disciplinary code or other state law does not amount to a violation of federal due process") (citing *Linear v. Vill. of Univ. Park*, 887 F.3d 842, 844 (7th Cir. 2018)); *Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (finding that inmate's claim that prison failed to follow internal policies had "no bearing on his right to due process"). Moreover, only nineteen days passed between the date the restitution amount appeared on his trust fund account and the date of the re-hearing when the same sanctions were reimposed. Hawkins-El doesn't allege any money was actually taken from his account during that short time period. As such, he suffered no prejudice, and any accounting error was harmless. *See Jones v. Cross*, 637 F.3d 841, 846 (7th Cir. 2011) (applying harmless error analysis to a prison disciplinary proceeding); *see also Glebe v. Frost*, 574 U.S. 21, 23 (2014) ("*Most* constitutional mistakes call for reversal only if the government cannot demonstrate harmlessness.") (emphasis in original). Thus, Hawkins-El hasn't stated any claims related to the original hearings or the time-period following them prior to the re-hearings.

As to those re-hearings, Hawkins-El does not allege he failed to receive advance written notice of the charges, an opportunity to call witnesses and present documentary evidence in his defense, or a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. Rather, the only *Wolff* factor he references relates to the impartiality of the decision-maker—namely, that DHO N. Angle violated his due process rights because he "had to be aware that the restitution existed in my sanction and thus knew he was going to find Hawkins-El guilty." ECF 19-1 at 4. In other words, he believes DHO N. Angle was biased. However—as pointed out in both orders dismissing his habeas petitions[6]—the fact that DHO N. Angle had knowledge of or presided over his prior hearings isn't sufficient to establish bias. *See Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) ("Adjudicators are entitled to a presumption of honesty and integrity, and thus the constitutional standard for impermissible bias is high[.] CAB members are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding.") (internal citations omitted); *Liteky v. U.S.*, 510 U.S. 540, 551 (1994) ("Also not subject to deprecatory characterization as 'bias' or 'prejudice'

---

[6] *See Hawkins-El Habeas #1*, ECF 56 at pp. 6–7 ("[T]here certainly is not clear evidence to undermine the presumption of honesty and integrity."); *Hawkins-El Habeas #2*, ECF 25 at p. 7 ("None of Mr. Hawkins-El's allegations constitute clear evidence that DHO Angle was impermissibly biased. Mr. Hawkins-El was not entitled to automatic recusal, and he does not allege any basis that required recusal."). To the extent Hawkins-El is intending to challenge those specific habeas findings, he may not do so in this civil rights action. *See Green v. Junious*, 937 F.3d 1009, 1014 (7th Cir. 2019) (issues that a state court criminal case or disciplinary action have already decided may have a "preclusive effect under traditional collateral-estoppel analysis."); *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006) ("[A] plaintiff's claim is *Heck*-barred despite its theoretical compatibility with his underlying conviction if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction."); *see also Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011) (*Heck v. Humphrey*, 512 U.S. 477 (1994) "forbids a prisoner in his civil rights case to challenge a finding in his criminal or prison-discipline case that was essential to the decision in that case" but a judge may "disregard[], as mere surplusage, the portions of the complaint in which the plaintiff denies the board's findings.").

are opinions held by judges as a result of what they learned in earlier proceedings."); *see also Campbell*, 787 F.2d at 224 n.12 ("It is obvious that a *Wolff*-hearing, as was conducted in Campbell's case, if sufficient for the revocation of good-time credits, must be so for the entry of the restitution and impoundment orders.").

The main thrust of Hawkins-El's allegations is that there was insufficient evidence to support the restitution sanctions. As noted above, to satisfy due process, before an inmate is deprived of a protected interest, there must be "some evidence" in the record to support the deprivation. *Hill*, 472 U.S. at 455. As the Seventh Circuit has explained:

> This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). A conduct report alone can provide sufficient evidence to support a finding of guilt. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). Likewise, circumstantial evidence can be sufficient to satisfy the "some evidence" test. *Meeks v. McBride*, 81 F.3d 717, 721 (7th Cir. 1996). Determining whether the "some evidence" test is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Hill*, 472 U.S. at 455. "Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56; *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could

support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

Here, the conduct reports alone satisfy the "some evidence" standard for the restitution sanctions. The conduct report in *Hawkins-El Habeas #1* (MCF 22-04-0286 at ECF 20-1) indicates Hawkins-El struck Sgt. Betzner several times in the head causing his left eye to bleed, obscure his sight, and create double-vision. Furthermore, "[d]ue to the severity of the injury [he] was sent to outside treatment." *Id*. The report also indicates Hawkins-El "threw [Officer Conley] onto the bed where it appeared he was attempting to hold her down." *Id*. Similarly, the conduct report in *Hawkins-El Habeas #2* (MCF 22-04-0322 at ECF 14-1) states, "Hawkins [struck] Betzner directly in Betzner's face with his right fist" and notes that Officer Conley was "seen coming out of the cell continuing to bend over at the waist appearing like she [could not] breathe." The report concluded "both Betzner and Conley were sent to Dukes memorial Hospital due to the seriousness of their injuries they received from the assault." *Id*. Thus, there was clearly "some evidence" in the record to support the restitution sanctions, especially since the injuries suffered by the officers are described as serious enough to need outside medical treatment.[7] *See e.g.*, *Webb*, 224 F.3d at 652. Although Hawkins-El argues he wasn't provided with "any medical document[s]" related to the officers' alleged injuries "before or at the hearing[s]" (ECF 19-1 at 3), that is not a requirement necessary to

---

[7] Notably, the larger sanction of $50,000 was imposed for the charge described in Sgt. Betzner's conduct report, while the smaller sanction of $1,000 was imposed for the conduct report written by the investigator focusing on Officer Conley. This is consistent with the scope of the injuries sustained by the officers.

satisfy due process. *See e.g.*, *Tonn*, 607 Fed. Appx. at 590 (recognizing a distinction between a claim "asserting a right to *see* the evidence of costs," which does not necessarily violate due process, and a claim that a "hearing was devoid of [any] such evidence," which can trigger due process concerns) (emphasis in original); *see also Hull*, No. 22-2848, 2024 WL 81104, at *2–3 (affirming district court decision that "some evidence" supported the restitution sanction, noting that IDOC policy allows assessment of a restitution sanction "up to" an estimated amount when it is not initially ascertainable,[8] and finding that even if there were irregularities in subsequently implementing the withdrawal of restitution, "[a] state actor's violations of the disciplinary code or other state law does not amount to a violation of federal due process"). Accordingly, considering the allegations in the complaint—along with the judicially noticeable conduct reports and habeas record—Hawkins-El has not stated a viable Fourteenth Amendment claim. *See Atkins*, 631 F.3d at 832; *McCready*, 453 F.3d at 888 (plaintiff can plead himself out of court if he pleads facts that preclude relief).[9]

---

[8] IDOC Policy and Administrative Procedure Disciplinary Code for Adult Offenders, number 02-04-101 § IX(E)(3), provides that restitution may be imposed as a sanction for a disciplinary offense. With regard to restitution for medical expenses, footnote five of that section states, "If it is not possible to determine the amount of medical restitution at the time of hearing due to ongoing medical treatment or a delay in receiving the medical bills, the Disciplinary Hearing Officer may assess a medical expense restitution sanction up to an estimated amount. . . . [A] Disciplinary Hearing Officer is encouraged to use his or her own judgment and experience to determine the appropriate amount of an estimate. . . . A Disciplinary Hearing Officer shall make certain that appropriate facility personnel are aware of an ongoing medical restitution sanction, and that a hold is placed upon the offender's trust account if appropriate."

[9] Of note, although Hawkins-El repeatedly insists that the officers' injuries were "de minimis" or fabricated and that they "didn't need no outside treatment" (ECF 19-1 at 4), these allegations are plainly inconsistent with the conduct reports of which he was found guilty and the corresponding habeas petitions which were denied. He cannot rely on allegations in this civil rights case that contradict those for which he has been adjudged guilty. *See Green*, 937 F.3d at 1014; *see also Moore*, 652 F.3d at 723.

Similarly, although the criminal case # 52D01-2209-F5-000252 that Hawkins-El cites to in his amended complaint was filed *after* DHO N. Angle issued his findings—and thus cannot be used as a basis

"The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). "District courts, however, have broad discretion to deny leave to amend a complaint where the amendment would be futile." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 572 (7th Cir. 2023). For the reasons previously explained, such is the case here.

Accordingly, the court:

(1) DENIES the earlier filed motions to amend as moot (ECF 17 & ECF 18);

(2) GRANTS the most recent motion to amend (ECF 19);

(3) DIRECTS the clerk to separately docket ECF 19-1 as the second amended complaint and ECF 19-2 as its exhibits;

(4) DIRECTS the clerk to attach Exhibits 1, 2, 3, and 4 to this order; and

(5) DISMISSES this case pursuant to 28 U.S.C. § 1915A because the second amended complaint fails to state a claim upon which relief can be granted.

SO ORDERED on September 3, 2024

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT

---

to determine whether Hawkins-El received due process in connection with the restitution sanctions—the same reasoning regarding inconsistency applies to his criminal case. Specifically, Hawkins-El pled guilty to two counts of battery resulting in Sgt. Betzner's eye socket fracture and Officer Conley's facial and/or scalp contusions. *See* Ex. 1 – Information. He cannot rely on allegations inconsistent with his guilty plea to support his claims here. *See Green*, 937 F.3d at 1014; *Moore*, 652 F.3d at 723; *see also Morgan v. Schott*, 914 F.3d 1115, 1120 (7th Cir. 2019) ("The favorable-termination rule [in *Heck*] is more than a procedural hurdle that plaintiffs can skirt with artful complaint drafting or opportunistic affidavits. Rather, it is grounded in substantive concerns about allowing conflicting judgments.").

DM2310946

| | |
|---|---|
| STATE OF INDIANA ) | IN THE MIAMI SUPERIOR COURT I |
| ) SS: | |
| COUNTY OF MIAMI ) | CAUSE NUMBER 52D01-2209-F5 |
| STATE OF INDIANA | INFORMATION FOR: |
| VS | Count 1: |
| JOHN HAWKINS | BATTERY RESULTING IN BODILY INJURY TO A PUBLIC SAFETY OFFICIAL |
| Miami Correctional Facility<br>3038 W 850 S (956724)<br>Bunker Hill, IN 46914 | I.C. 35-42-2-1(c)(1)  and I.C. 35-42-2-1(g)(5)(A) |
| DOB: 5/25/1979 | A LEVEL 5 FELONY |

Count 1:

The undersigned says that on or about April 22, 2022 in Miami County, State of Indiana, John Hawkins did knowingly or intentionally touch DONNY BETZNER, a public safety official, in a rude, insolent, or angry manner by striking him and/or struggling with him while said officer was engaged in the execution of his official duties, resulting in bodily injury, an eye socket fracture and/or a split eye lid, contrary to the form of the statutes in such cases made and provided by I.C. 35-42-2-1(c)(1) and I.C. 35-42-2-1(g)(5)(A) and against the peace and dignity of the State of Indiana.

I affirm under the penalties of perjury that the foregoing representations are true to the best of my knowledge and belief.

_____
Courtney Alwine, Attorney #34369-49
Deputy Prosecuting Attorney

WITNESSES:

JONATHAN SNOW
DONNY BETZNER
TONYA CONLEY

DM2310946

STATE OF INDIANA )
                ) SS:
COUNTY OF MIAMI )

STATE OF INDIANA

      VS

JOHN HAWKINS

Miami Correctional Facility
3038 W 850 S (956724)
Bunker Hill, IN 46914

DOB: 5/25/1979

IN THE MIAMI SUPERIOR COURT I

CAUSE NUMBER 52D01-2209-F5

INFORMATION FOR:

Count 2:

BATTERY RESULTING IN BODILY INJURY TO A PUBLIC SAFETY OFFICIAL

I.C. 35-42-2-1(c)(1) and I.C. 35-42-2-1(g)(5)(A)

A LEVEL 5 FELONY

Count 2:

The undersigned says that on or about April 22, 2022 in Miami County, State of Indiana, John Hawkins did knowingly or intentionally touch TONYA CONLEY, a public safety official, in a rude, insolent, or angry manner by striking her and/or struggling with her while said officer was engaged in the execution of her official duties, resulting in bodily injury, a facial contusion and/or scalp contusion, contrary to the form of the statutes in such cases made and provided by I.C. 35-42-2-1(c)(1) and I.C. 35-42-2-1(g)(5)(A) and against the peace and dignity of the State of Indiana.

I affirm under the penalties of perjury that the foregoing representations are true to the best of my knowledge and belief.

Courtney Alwine, Attorney #34369-49
Deputy Prosecuting Attorney

WITNESSES:

JONATHAN SNOW
DONNY BETZNER
TONYA CONLEY

**CASE NUMBER: 52D01-2209-F5-000252   FILED: 9/9/2022**

Page ___1___ of ___1___ page(s)

# PROBABLE CAUSE AFFIDAVIT

STATE OF INDIANA
COUNTY OF MIAMI   } SS:

John Hawkins
_____
DEFENDANT'S NAME

I, Joshua Snow, of the IDOC Correctional Police Department, _____ being first duly sworn upon
Oath, says that on the ____22nd____ day of _____April_____ _____2022_____
in the County of Miami and in the State of Indiana and at the _____Miami Correctional Facility_____
_____Bunker Hill Indiana, 46914_____
location, the following offense occurred:

The undersigned deposes and says upon information and belief that John Hawkins DOC # 956724, DOB 5/25/1979, has committed the offenses of Battery on a Public Safety Officer IC 35-42-2-1 (a)(3) Level 5 Felony; In support thereof says as follows:

On 4/22/2022, John Hawkins was incarcerated at Miami Correctional Facility. John Hawkins was assigned to J Housing Unit at the time of the offense. At approximately 8:51 AM on 04/22/2022 John Hawkins assaulted Sergeant Donny Betzner and Officer Tonya Conley in the course of performing their official duties.

On 4-22-2022 at approximately 8:50 AM Sergeant Betzner and Officer Conley enter the 1-2 side day room of J – Housing unit to begin conducting cell inspections. While conducting the inspections Betzner enters cell 103/104 and removes a sheet hanging from the wall. The sheet was being used as a curtain to impair surveillance into the cell which is unauthorized. As Betzner is exiting the cell Hawkins approaches him and begins to question Betzner as to why he took his sheet. Betzner explains why and continues his detail. Betzner enters cell 111/112 to remove another sheet. As Betzner exits the cell and approaches the front of the next cell Hawkins strikes him in the face with his right hand knocking him into the corner out of camera view. Officer Conley responds to the situation with the intent to separate and control the situation. The struggle ends up inside cell 111/112 when Betzner deploys his chemical agent. Betzner is seen backing out of the cell with Hawkins moving towards him. Betzner continues to deploy his chemical agent and Hawkins retreats by going to the sanitation closet to attempt to decontaminate from the chemical agent. Hawkins was restrained and removed from the housing unit.

Betzner and Conley were both sent to the hospital where they received treatment for their injuries. It was determined that Betzner's eye lid was split in 3 places requiring 8 stitches to repair as well as a CT scan determined that the Orbital socket had been fractured. Due to the nature of the fracture, Betzner was transported from Dukes Memorial Hospital to Lutheran Hospital where another CT scan of the injury and consultation with Doctor Austin Gerber determined that the eye socket fractured would require surgery to repair to alleviate the double vision. Conley received facial and scalp contusions.

Attachments:
1.    Case Report
2.    Video Recording – JHU Dayroom
3.    Video Recording – Sergeant Betzner, Officer Conley, and Hawkins interviews
4.    Sergeant Betzner and Officer Conley's medical reports
5.    Photographs – Sergeant Betzner and Officer Conley's injuries

I (we) affirm, under the penalties for perjury, that the foregoing representation(s) is (are) true.

Be it further known that the facts herein may be used by the prosecuting attorney, in any manner he deems proper in the arrest and prosecution of the offender, named herein, and may be used against the affiant if the facts herein, stated by the affiant, are found to be untrue.

Subscribed and sworn to before me this ___11th___ day of
August 2022
My commission expires:

Joshua Snow
_____
Badge #1102
_____
A Employee of Miami County

about:blank

STATE OF INDIANA )
               ) SS:
COUNTY OF MIAMI )

STATE OF INDIANA

    VS

JOHN HAWKINS
DOB: 5/25/1979

IN THE MIAMI SUPERIOR COURT I

CAUSE NUMBER 52D01-2209-F5-000252

CHARGE:

Count 1:
BATTERY RESULTING IN BODILY INJURY TO
A PUBLIC SAFETY OFFICIAL
I.C. 35-42-2-1(c)(1) and I.C. 35-42-2-1(g)(5)(A)
A LEVEL 5 FELONY

Count 2:
BATTERY RESULTING IN BODILY INJURY TO
A PUBLIC SAFETY OFFICIAL
I.C. 35-42-2-1(c)(1) and I.C. 35-42-2-1(g)(5)(A)
A LEVEL 5 FELONY

PLEA TO: Count 1 and 2, Both Amended to a Level
6 Felony

## MOTION TO WITHDRAW FORMER PLEA OF NOT GUILTY
## AND ENTER A PLEA OF GUILTY

The above named Defendant respectfully represents to the Court as follows:

1. My full true name is _John A. Hawkins Sr-E_.

2. I was born on _5-25-79_ at _Indianapolis_ in the State of
_Indiana_. I completed my schooling through _GED_, at
_Gf Boys School_. I can read, write, and understand the English language.

3. I am represented by Attorney _Dustin Heen_ and I am satisfied with their services in this
matter.

4. I have received a copy of the information. I have read and discussed it with my attorney and believe that I understand every
accusation made against me in this case.

5. I have given my attorney all of the facts known to me concerning the matter mentioned in the information, including all
witnesses in my behalf, and believe that my attorney is fully informed as to all such matters. My attorney has since advised me
as to any possible defenses I might have in this case.

6. My attorney also has advised me that:

(a) A person who commits a Level 5 felony (for a crime committed after June 30, 2014) shall
be imprisoned for a fixed term of between one (1) and six (6) years, with the advisory
sentence being three (3) years. In addition, the person may be fined not more than ten
thousand dollars ($10,000).

A person who commits a Level 6 felony (for a crime committed after June 30, 2014) shall

be imprisoned for a fixed term of between six (6) months and two and one-half (2 ½ ) years, with the advisory sentence being one (1) year. In addition, the person may be fined not more than ten thousand dollars ($10,000).

(b) **as a result of a plea agreement the Prosecutor will recommend:**

**DEFENDANT SHALL PLEAD GUILTY TO COUNTS 1 AND 2. COUNTS 1 AND 2 SHALL BE AMENDED TO A LEVEL 6 FELONY. COUNTS 1 AND 2 SHALL RUN CONSECUTIVE.**

**ON EACH COUNT, DEFENDANT SHALL BE SENTENCED TO TWO (2) YEARS IN THE INDIANA DEPARTMENT OF CORRECTIONS.**

**THIS SENTENCE SHALL RUN CONSECUTIVE TO 77D01-0801-FD-11 AND 49G01-9708-CF-127418.**

7. I understand that even though the Prosecuting Attorney may have agreed to make a recommendation as to my sentence, the Court is not a party to that agreement and is not required to follow that recommendation. The Court may only accept or reject that agreement. If the Court accepts the agreement, then the Court is bound by the agreement and must impose sentence in accordance with the plea agreement. If the Court rejects the plea agreement, then my plea of not guilty shall be reinstated. I understand also that if I plead GUILTY, my punishment could be the same as, greater than or less than if I had plead NOT GUILTY, had stood trial and been convicted by a Court of Jury.

8. I understand that I may, if I so choose, plead NOT GUILTY to any offense charged against me, and that if I choose to plead NOT GUILTY, the constitution guarantees me:
    (a) The right to know the nature of the charges against me and to have a copy of the information served on me in writing.
    (b) The right to have the statute under which I am charged read to me.
    (c) The right to a fair, impartial, public and speedy trial by jury (if charged as a misdemeanor, Defendant must request a trial by jury) in the County in which the offense is alleged to have occurred. I waive my right to a trial by jury and ask that this cause be submitted to the Court without intervention of a jury.
    (d) The right to see, hear, and cross examine all the witnesses against me at my trial.
    (e) The right to the presumption of innocence and to force the State to prove the charge against me beyond a reasonable doubt, with no requirement on my part to prove anything.
    (f) The right to testify at my trial; to subpoena witnesses and present any evidence in my favor.
    (g) The right to the assistance of counsel at every stage of the proceedings, including upon an appeal if I am convicted, and that if I do not have the money for an attorney, the Court will appoint one for me at public expense.
    (h) The right to be released on reasonable bond.

9. I know the Court will not accept a plea of GUILTY from anyone who claims to be innocent, and I make no claim of innocence. I now state that I did commit the crime to which I am pleading guilty.

10. I declare that I offer my plea of GUILTY freely and voluntarily. I do not do so because of any threat from anyone, or because of any promise from anyone that I would receive probation, a lighter sentence, or any other form of leniency.

11. I understand that I am entitled to have all of my rights in this matter explained to me, and that I have the right to have any questions answered for me by the Court.

12. I declare that no person has made any promise or suggestion of any kind to me, or within my knowledge, to anyone else that I would receive any favors, special treatment, or any other form of leniency if I would decide not to have a jury trial in this case. I declare that no person has made any threat of any kind to me or within my knowledge to anyone else, to coerce me not to have a jury trial in this case.

13. I have read this Motion, and I understand the content within.

14. Therefore, I respectfully move the Court to withdraw my former plea of NOT GUILTY and to enter a plea of GUILTY as indicated above, and I ask the Court to accept and enter my plea of GUILTY in reliance upon my statement made in this Motion.

Signed by me in the presence of my attorney this ___ day of ___ 2023.

10/17/23, 10:21 AM                                about:blank

_Aohn, G. Hawkins_
/ Defendant

## CERTIFICATE OF COUNSEL

The undersigned as Attorney for the Defendant above named, hereby certifies as follows:

1. I have read and fully explained to the Defendant all the accusations against the Defendant which are set forth in the information in this case;

2. I have discussed the foregoing written MOTION TO WITHDRAW FORMER PLEA OF NOT GUILTY AND ENTER A PLEA OF GUILTY with the Defendant and to the best of my knowledge and belief each statement set forth therein is in all respects accurate and true;

3. The plea of guilty, as offered by the Defendant in the foregoing Motion, accords with my understanding of the facts related to me by the Defendant, and is consistent with my advice to the Defendant;

4. In my opinion, the plea of guilty as offered by the Defendant in the foregoing Motion is freely, voluntarily, and knowingly made, and is in the best interest of the Defendant and I recommend to the Court that such plea of guilty be now accepted and entered on behalf of the Defendant.

Signed by me in the presence of the Defendant above named, this 17th day of _October_, 2023.

_[signature]_
Attorney for Defendant

## PROSECUTOR'S CONSENT

I have examined the foregoing MOTION TO WITHDRAW PLEA OF NOT GUILTY AND ENTER A PLEA OF GUILTY and affirm that the facts contained therein are true and correct and further certify that I have complied with I.C. 35-35-3-2.

_Courtney Alwine_
Courtney Alwine, Attorney #34369-49
Deputy Prosecuting Attorney

Date:_____10/17/23_____

## ACCEPTANCE BY THE COURT

AND THE COURT, having personally addressed the Defendant and having advised him/her of his/her rights and having determined that he/she understands the same and has entered his/her plea voluntarily and not by reason of any promises, force or threats having been made to him/her, now ACCEPTS the Defendant's plea of GUILTY and ORDERS this Motion and Certificate of Counsel to be made part of the transcript of the entire proceedings of the GUILTY plea hearing and sentencing herein.

_____
The Honorable J. David Grund
Judge, Miami Superior Court I

Entered:_____

STATE OF INDIANA,          )          IN THE MIAMI SUPERIOR COURT I
                           )SS:
COUNTY OF MIAMI,           )

STATE OF INDIANA
      VS                              CAUSE NO. 52D01-2209-F5-252
JOHN HAWKINS

      Comes now the defendant, with counsel, Dustin Kern, and comes now the State of
Indiana by Jennifer Keifer.  Defendant having withdrawn his plea of not guilty and entered a plea
of guilty to Counts 1 and 2, Battery Against a Public Safety Official, a Level 6 felony.  Hearing
held as to sentencing.  Court finds aggravating factors as follows: Defendant's prior criminal
history.  Court finds mitigating factors as follows: Defendant entered into a plea saving the State
the time and expense of trial.  Court finds aggravating factors outweigh mitigating factors.  Court
finds the defendant guilty of Counts 1 and 2 and sentences him to the Department of Corrections
for 2 years on each count.  Said sentences to run consecutively with each other and consecutive
to 77D01-0801-FD-11 and 49G01-9708-CF-127418.  Court finds defendant indigent and waives
costs.

      ALL OF WHICH IS ORDERED this _16_ day of November, 2023.

                              J. DAVID GRUND, JUDGE
                              MIAMI SUPERIOR COURT I